UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUFUS BOHNIE LEVELS, JR. ) | 1:09-CV-02103 DLB HC |
| ) | |
| Petitioner, ) | ORDER DENYING PETITION FOR WRIT |
| ) | OF HABEAS CORPUS |
| v. ) | |
| ) | ORDER DIRECTING CLERK OF THE |
| HARRINGTON, ) | COURT TO ENTER JUDGMENT |
| ) | |
| Respondent. ) | ORDER DENYING CERTIFICATE OF |
| ) | APPEALABILITY |

Rufus Bohnie Levels, Jr. (hereinafter "Petitioner") is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**Procedural History**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a judgment of the Fresno County Superior Court. A jury found Petitioner guilty of Count I, assault by means of force likely to produce great bodily injury (Cal.Penal Code § 245, subd. (a)(1))[1]; Count II, corporal injury to a spouse/cohabitant (§ 273.5, subd. (e)) 245(b)); Count III, pimping (§ 266h, subd. (a)); and Count VI, disobeying a domestic relations order (§ 273.6, subd. (d)). The jury also found true two prior convictions of violating § 273.5 and Petitioner admitted a "strike" prior conviction that he had previously been convicted of a serious or violent

---

[1] Unless otherwise indicated, all statutory references are to the California Penal Code.

felony, the subject of three special allegations. The trial court sentenced Petitioner to a prison term of 16 years, consisting of the upper term of 12 years (six years doubled) for the pimping conviction, a consecutive two years eight months for the corporal injury conviction, and a consecutive one year four months for the domestic relations order conviction. The trial court imposed no sentence for Count I's assault conviction.

Petitioner appealed his conviction to the California Court of Appeal, Fifth Appellate District. In its original opinion issued on June 23, 2008, the California Court of Appeal remanded to the trial court for sentencing on Count I, but affirmed the affirmed the judgment in all other aspects. See Respondent ("Resp't") Lodged Doc 1, Fifth District Court of Appeal's June 23, 2008 Opinion at 1. Though the record is not clear as to the sentence on remand, according to Petitioner his total sentence of sixteen years remained unchanged. See Petition at 1.

Petitioner filed a petition for review in the California Supreme Court on July 29, 2008. See Resp't Lodged Doc. 5. The California Supreme Court denied the petition on October 1, 2008. See Resp't Lodged Doc. 6.

On December 03, 2009, Petitioner filed the instant federal petition for writ of habeas corpus. See Doc. No. 1. On March 24, 2010, Petitioner filed a first amended petition for writ of habeas corpus. See Doc. No. 15. On May 21, 2010, Respondent filed an answer to the petition. See Doc. No. 16. The parties have consented to Magistrate Jurisdiction. See Doc. Nos. 5, 10.

**Factual Background[2]**

The Court adopts the California Court of Appeal's summation of the facts surrounding Petitioner's crime and conviction:

> At approximately 4:00 a.m. on June 19, 2006, Jeanette Clayton saw Liza Alvarez at a telephone booth. Alvarez's eyes were red and she appeared nervous. Alvarez told Clayton that she was trying to hide from her boyfriend. At that point, [Petitioner] came up and cursed at Alvarez and hit her. Alvarez fell to the ground and [Petitioner] kicked her. Clayton told [Petitioner] to leave Alvarez alone, but he told Clayton to mind her own business. [Petitioner] and Alvarez then walked to the Sahara Motel.

---

[2] These facts are derived from the California Court of Appeal's opinion issued on June 23, 2008. See Resp't Lodged Doc. 4. Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is presumed to be correct unless Petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); see Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004); Moses v. Payne, 555 F.3d 742, 746 n. 1 (9th Cir. 2009).

Once Alvarez and [Petitioner] were inside their room, Clayton could hear Alvarez screaming. Clayton tried to look into the room, but [Petitioner] shut the door. Clayton saw [Petitioner] swing at Alvarez, and she called 911. The 911 tape was played for the jury. When police arrived, Clayton identified [Petitioner] as the person who was beating Alvarez. Clayton saw Alvarez talking with the officers.

Officer James Barnum responded to the June 19 dispatch at the Sahara Motel at 4:50 a.m. When he spoke to Alvarez, who was six months pregnant at the time, he noticed injuries on her face, neck, and arms. She had a bruise below her right eye, an injury to her shoulder, and bruises on her left arm. Alvarez, who was crying, shaking, and short of breath, told the officer that her boyfriend had caused her injuries, but she refused to identify him. She said he had punched her in the face and stomped on her body. Alvarez declined medical treatment.

Alvarez told Officer Barnum that she was a prostitute, and that she and her boyfriend were both drug users. Alvarez stated that she supported herself and her boyfriend by being a prostitute. When asked if there were other instances of abuse, Alvarez told the officer there had been continuous abuse during their relationship, which had become increasingly more violent. Alvarez told the officer the abuse occurred because she "wasn't improving their quality of living"; she wasn't making enough money to get them out of "a perverted living condition."

Alvarez told the officer that there was an active restraining order against her boyfriend, but she refused to name him because she was afraid of him. Alvarez told the officer that if they did not catch him right away, "he was gonna get out and fuck her up or kill her." Alvarez said, "'If I tell you his name and press charges, this beating won't be shit compared to what he's going to do to me when he gets out.'"

Officer Barnum got [Petitioner's] name from Clayton, who knew him as "Rufus." Alvarez eventually provided the officer with [Petitioner's] full name. [Petitioner] was found hiding in another room in the motel.

Alvarez did not want to testify at trial. Alvarez and [Petitioner] had been together for almost four years, and she considered [Petitioner] her "husband," although they were not married. According to Alvarez, both she and [Petitioner] were unemployed, and they asked Alvarez's father for money to pay for the motel and for food.

Alvarez, who was on probation at the time of the trial, admitted that she had been a prostitute for four or five years. She had been arrested four or five times, including for prostitution. She worked as a prostitute before she met [Petitioner], but claimed to have been out of the business for a year. Alvarez spent most of the money she made from prostitution on drugs, although some of the money was used to support herself and [Petitioner]. Alvarez claimed that, when she worked as a prostitute, she did not tell [Petitioner] what she was doing. Alvarez insisted that [Petitioner] was not her pimp.

Alvarez admitted that she and [Petitioner] argued occasionally, but he did not raise his voice or throw things, and he never got very angry. Alvarez claimed that [Petitioner] never injured her and she denied speaking to officers about [Petitioner] hurting her.

Alvarez claimed not to remember telling officers about an earlier incident in which she and [Petitioner] had an argument while at [Petitioner's] mother's house, and she denied a photograph was taken of those injuries. According to Alvarez, she did not recall any incident in which [Petitioner] had injured her.

Alvarez explained that she was working as a prostitute when a "Mexican guy" beat her up and, although she could not remember how long ago the incident occurred, she was pregnant at the time. Alvarez testified that the man hit her and punched her and she could not get away from him. When she did, she went to the Sahara Motel to get help. There she found [Petitioner] hugging a "blond haired girl" inside a motel room, which made her angry. Alvarez left the room to call the police and found someone named Jeanette. She asked Jeanette to call the police but did not explain why. Alvarez testified that she refused to answer the officer's questions and she did not tell them anything about [Petitioner]. According to Alvarez, the police just assumed it was [Petitioner] who had beaten her. She did not want to talk to the officers because she was using cocaine at the time, and she did not tell the police about the "Mexican guy" because she was angry with [Petitioner].

Alvarez claimed not to be afraid of [Petitioner]. Nor was she afraid that if [Petitioner] got out of jail, he would be angry because he was charged with the current crimes. Alvarez sent two letters to the court asking that [Petitioner] be released. In the second, she explained that someone other than [Petitioner] had assaulted her.

Alvarez's father testified that he observed injuries to his daughter when she came to his house on March 31, 2006, six weeks before the events here in question. Alvarez told her father that [Petitioner] had slapped her. Alvarez's father insisted that his daughter call the police because she was complaining that her head hurt and her eyes bothered her. Alvarez's father had known [Petitioner] to strike his daughter on a prior occasion. He acknowledged that his daughter was a prostitute and that she used crack cocaine.

Officer Trevor Shipman responded to the March 31 dispatch and spoke to Alvarez. Alvarez had "a very large and swollen black and blue left eye." Alvarez told the officer that she had a fight with [Petitioner] the day before at his mother's house, during which [Petitioner] grabbed her by the neck and slapped her across the face. Alvarez told the officer there had been other instances of abuse, but she had not reported them because she was afraid of [Petitioner].

Katherine Quinn-Cask testified as an expert on Battered Women's Syndrome. She explained that abused women do not talk freely about the abuse that they experience and often will distance themselves from others in order to avoid discussing the problem. Quinn-Cask explained the various "phases" that victims of domestic violence go through with their abusers, and the various tactics and behaviors of abusive relationships. According to Quinn-Cask, victims of Battered Women's Syndrome often demonstrate low self-esteem, fear, and will deny that abuse occurred. The victims will often remain with the abusers despite repeated attacks, will not report the abuse, and frequently do not wish to proceed with prosecuting criminal charges against their abuser.

See Resp't Lodged Doc. 4.

## Discussion

I.   **Jurisdiction and Venue**

A person in custody pursuant to the judgment of a state court may file a petition for a writ of habeas corpus in the United States district courts if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v.

Taylor, 529 U.S. 362, 375, n.7 (2000). Venue for a habeas corpus petition challenging a conviction is proper in the judicial district in which the petitioner was convicted. 28 U.S.C. § 2241(d).

As Petitioner asserts that he is in custody pursuant to a State conviction which violated his rights under the United States Constitution, the Court has jurisdiction over this action. 28 U.S.C. § 2254(a). Petitioner was convicted in Fresno County, California, which is within the Eastern District of California, and thus venue is proper in the Eastern District. 28 U.S.C. § 84; 28 U.S.C. § 2241(d).

## II.     Standard of Review

On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. Lindh v. Murphy, 521 U.S. 320, 326-27 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of AEDPA and is consequently governed by its provisions. See Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Thus, the petition "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Irons v. Carey, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)), overruled in part on other grounds, Hayward v. Marshall, 603 F.3d 546, 555 (9th Cir. 2010) (en banc); see Lockyer, 538 U.S. at 70-71.

Title 28 of the United States Code, section 2254 remains the exclusive vehicle for Petitioner's habeas petition as Petitioner is in the custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. See Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006) overruled in part on other grounds, Hayward, 603 F.3d at 555. As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id. (quoting Williams, 529 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."

Id. Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Id. at 72 (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. Clark v. Murphy, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While *only* the Supreme Court's precedents are binding on the Arizona court, and only those precedents need be reasonably applied, we may look for guidance to circuit precedents"); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999) ("[B]ecause of the 1996 AEDPA amendments, it can no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal Constitutional issue. . . . This does not mean that Ninth Circuit case law is never relevant to a habeas case after AEDPA. Our cases may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established'"). Furthermore, AEDPA requires that the Court give considerable deference to state court decisions. The state court's factual

1  findings are presumed correct. 28 U.S.C. § 2254(e)(1). A federal habeas court is bound by a state's
2  interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002).

3        The initial step in applying AEDPA's standards is to "identify the state court decision that is
4  appropriate for our review." Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more
5  than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last
6  reasoned decision. Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) for the presumption
7  that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same
8  ground as the prior order). Thus, a federal habeas court looks through ambiguous or unexplained
9  state court decisions to the last reasoned decision to determine whether that decision was contrary to
10 or an unreasonable application of clearly established federal law. Bailey v. Rae, 339 F.3d 1107,
11 1112-13 (9th Cir. 2003).

12       In the instant petition, Petitioner raises four grounds for relief. Petitioner raised all four
13 grounds through direct appeal to the California Court of Appeal, which affirmed the judgment in a
14 reasoned opinion. See Resp't Lodged Doc. 4. Petitioner's claims were then raised in a petition for
15 review to the California Supreme Court, which summarily denied review. See Resp't Lodged Doc.
16 6. The California Supreme Court, by its "silent order" denying review is presumed to have denied
17 the claim for the same reasons stated in the opinion of the lower court. Ylst v. Nunnemaker, 501
18 U.S. 797, 803 (1991). Therefore, the Court "look[s] through" this decision to the last reasoned
19 decision, in this case, that of the California Court of Appeal, and analyzes whether the state court's
20 decision was an objectively unreasonable application of federal law. See Nunnemaker, 501 U.S. at
21 803-804.

22 **III.     Review of Petitioner's Claims**

23       Petitioner's Ground One asserts there was insufficient evidence to support his conviction for
24 pimping. See Petition at 5. In Ground Two, Petitioner contends the state law prohibiting pimping is
25 unconstitutionally vague. See Petition at 5. Petitioner's Ground three asserts the trial court's jury
26 instructions for the crime of pimping omitted an additional knowledge requirement in violation of
27 his rights to a fair trial. See Petition at 6. In Ground Four, Petitioner contends that the trial court
28 violated his rights to due process by providing a defective instruction regarding the state's burden to

prove his guilt beyond a reasonable doubt. See Petition at 6.

### A. Grounds One and Three: Petitioner's Insufficient Evidence and Jury Instruction Claims

For Count Three's charge of pimping, Penal Code Section 266h, subd. (a), the trial court provided the following instruction:

> The defendant is charged in Count 3 with pimping, in violation of Penal Code section 266h(a).
>
> To prove that the defendant is guilty of pimping, the People must prove that:
>
> 1. The defendant knew that Liza Alvarez was a prostitute; and
>
> 2. The money/proceeds that Liza Alvarez earned as a prostitute supported defendant, in whole or in part.
>
> A prostitute is a person who engages in sexual intercourse or any lewd act with another person in exchange for money or other compensation. A lewd act means physical contact of the genitals, buttocks, or female breast of either the prostitute customer with some part of the other person's body for the purpose of sexual arousal or gratification.[3]

See Clerk's Transcript ("CT") at 204. Petitioner's Ground Three asserts the above instructions, omitted an additional requirement that to be found guilty of the charge, Petitioner must have additionally known he was deriving support from the prostitute's earnings. See Petition at 5-6; see also Resp't Lodged Doc. 1 at 36. Based on this allegedly omitted instruction, Petitioner's Ground One contends there was insufficient evidence that he knowingly derived support from Alvarez's prostitution earnings. See Petition at 5; see also Resp't Lodged Doc. 1 at 19-20.

Addressing these two claims, the Court of Appeal found that (1) "that the plain language of the statute" did not require Petitioner's additional "knowledge" requirement; and (2) that there was sufficient evidence in support of the conviction. See Resp't Lodged Doc. 4 at 5-7. The Court of Appeal further stated:

> [T]he trial court instructed pursuant to pattern CALCRIM No. 1150 as follows:
>
> "To prove that [appellant] is guilty of pimping, the People must prove that: [¶] 1. [Appellant] knew that Liza Alvarez was a prostitute; and [¶] 2. The money/proceeds that Liza Alvarez earned as a prostitute supported [appellant] in whole or in part."

---

[3] Additionally, Penal Code Section 266h, subd. (a) reads in relevant part: "Any person who, knowing another person is a prostitute, lives or derives support or maintenance in whole or in part from the earnings or proceeds of the person's prostitution . . . is guilty of . . . a felony." See Resp't Lodged Doc. 4 at 4.

> The instruction as given follows the exact language of the statute.
>
> The court further instructed that pimping was a general intent crime. "[D]eriving support with knowledge that the other person is a prostitute is all that is required for violating the section. . . . No specific intent is required." (*People v. McNulty* (1988) 202 Cal.App.3d 624, 630-631.)
>
> . . .
>
> In instructing a jury, the trial court "must instruct even without request on the general principles of law relevant to and governing the case" and "[t]hat obligation includes instructions on all of the elements of a charged offense." (*People v. Cummings* (1993) 4 Cal.4th 1233, 1311.) *We do not read the statute to include a second "knowing" requirement*.
>
> Even assuming, however, that the instruction given should have included such a second "knowing" element, we conclude the trial court's error does not require reversal. The failure to instruct the jury on an element of the offense is subject to harmless error analysis under *Chapman v. California* (1967) 386 U.S. 18, 24. (*People v. Avila* (1995) 35 Cal.App.4th 642, 645-646 [failure to instruct on element of charged crime is subject to Chapman test of harmless error].) The error is prejudicial when "the defendant contested the omitted element and raised evidence sufficient to support a contrary finding," but not when it is clear "beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence." (*Neder v. United States* (1999) 527 U.S. 1, 17, 19.)
>
> [Petitioner] does not contest the fact that Alvarez was a prostitute, and he acknowledges that there was "some circumstantial evidence that Alvarez provided at least a small portion of the family's monthly income from her prostitution activity." But, he contends there was substantial evidence that family and friends helped Alvarez and him with "the bulk of the reported 'support' " for their family.
>
> . . .
>
> But the amount of money which a defendant receives from the prostitute is irrelevant for purposes of a pimping conviction. (E.g ., *People v. Jackson* (1980) 114 Cal.App.3d 207, 209 [single act of prostitution; defendant received $33]; People v. Courtney (1959) 176 Cal.App.2d 731 [two acts of prostitution; defendant received $20 from the first and undisclosed amount from the second].)

See Resp't Lodged Doc. 4 at 5-6 (emphasis added). As to Petitioner's sufficiency of the evidence claim, the Court of Appeal also specifically stated:

> The overwhelming evidence at trial was that appellant did not work while he and Alvarez lived together and that she worked as a prostitute. And although Alvarez claimed that she used most of the money that she earned on drugs, she admitted that she used her earnings as a prostitute to provide some of their support while she and [Petitioner] lived together. Alvarez told Officer Barnum that [Petitioner] had abused her in the past because she did not earn enough money for their support. From this evidence, the jury could reasonably infer that [Petitioner] knew that Alvarez was a prostitute and that he "derive[d] support or maintenance . . . in part" from her earnings as such.

> The evidence was therefore sufficient to uphold [Petitioner's] pimping conviction.
>
> . . .
>
> Finding sufficient evidence to uphold [Petitioner's] pimping conviction, we are also satisfied that, in this case, the "jury verdict would have been the same" (*Neder v. United States*, *supra*, 527 U.S. at p. 19) had the pimping instruction included an element that [Petitioner] knowingly derived support from Alvarez's earnings as a prostitute.

See Resp't Lodged Doc. 4 at 6-7.

The state court's decision was not "contrary to, or involved an unreasonable application of, clearly established Federal law," or an "unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d). As to Petitioner's insufficient evidence claim, pursuant to the U.S. Supreme Court's holding in Jackson v. Virginia, 443 U.S. 307, 314, (1979), the test to determine whether a factual finding is fairly supported by the record is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319; see Lewis v. Jeffers, 497 U.S. 764, 781 (1990); Bruce v. Terhune, 376 F.3d 950, 956-57 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 319) (stating "Jackson cautions reviewing courts to consider the evidence 'in the light most favorable to the prosecution'"). Where the record supports conflicting inferences, a federal habeas court "must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326. Finally, a federal habeas court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986).

Here, even presuming the trial court had provided Petitioner's alleged omitted instruction, the record reflects that the evidence at trial was clearly sufficient to support the jury's finding of guilt. To begin with, Petitioner appears to admit that "there was some circumstantial evidence that Alverez provided at least a small portion of the family's monthly income from her prostitution activity." See Resp't Lodged Doc. 4 at 22. Additionally, trial testimony provided by Alverez established that Petitioner was unemployed while he and Alverez were living together and Alverez was working as a prostitute. See Reporter's Transcript ("RT") at 948. Officer Barnum further testified that Alverez had told him that Petitioner obtained money as a result of working as a prostitute and that her

relationship with Petitioner had turned increasingly violent when Petitioner deemed she was not earning enough money from prostitution. See RT at 1103, 1105-06.  Given the substantial evidence presented at trial, Petitioner's insufficient evidence claim lacks merit and will be denied.

As to Petitioner's jury instruction claim, challenges to jury instructions are issues of state law and are not cognizable in a federal habeas corpus action. Estelle v. McGuire, 502 U.S. 62, 71 72 (1991).  To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. Id. at 72.  Additionally, the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Id.  Furthermore, even if it is determined that the instruction violated the petitioner's right to due process, a petitioner can only obtain relief if the unconstitutional instruction had a substantial influence on the conviction and thereby resulted in actual prejudice under Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (whether the error had a substantial and injurious effect or influence in determining the jury's verdict.). Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996).  The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. Id.

The Court agrees with the Court of Appeal that the instructions as a whole in the present case clearly informed the jury of the elements required for the crime of pimping.  The jury is presumed to have followed its instructions. See Weeks v. Angelone, 528 U.S. 225, 226 (2000).  Moreover, in light of the substantial evidence presented at trial, Petitioner has not shown that there is a reasonable likelihood that any alleged omission from the instructions resulted in a "a substantial and injurious effect" on the trial's outcome. Brecht, supra, 507 U.S. at 637.  Accordingly, the Court concludes that Petitioner is not entitled to federal habeas relief on this claim.

**B.    Ground Two: Petitioner's claim that the pimping statute is vague**

In Ground Two, Petitioner claims that the pimping statute (§ 266h, subd. (a)) is unconstitutionally vague. See Petition at 5; see also Resp't Lodged Doc. 1 at 26.  Petitioner argues that the statute is vague as applied to him because the "statute does not provide fair notice to a

husband that merely living with an active prostitute will subject him to such serious penalties." See Resp't Lodged Doc. 1 at 28.

Addressing Petitioner's vagueness claim, the Court of Appeal stated:

> To withstand a vagueness challenge, a penal statute must satisfy two basic requirements. First, the statute must provide adequate notice to those who must observe it. (*People v. Rubalcava* (2000) 23 Cal.4th 322, 332; *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1116; *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1106.) Ordinary people of common intelligence should be able to understand what is prohibited by the statute and what may be done without violating its provisions. (*Tobe v. City of Santa Ana, supra*, at pp. 1106-1107.) Second, the statute must provide sufficiently definite guidelines for enforcement. A vague law impermissibly delegates policy matters to the police, judges, and juries for resolution on a subjective basis, with the attendant risk of arbitrary and discriminatory enforcement. (*People v. Superior Court (Caswell)* (1988) 46 Cal.3d 381, 390; *People v. Ellison* (1998) 68 Cal.App.4th 203, 207.)
>
> In determining the sufficiency of the notice, we examine a statute in light of the conduct with which the defendant is charged. If the defendant can reasonably understand by the terms of the statute, either standing alone or as construed, that his or her conduct was criminal and prohibited, the statute is not vague. (*United States v. Lanier* (1997) 520 U.S. 259, 267; *People v. Powers* (2004) 117 Cal.App.4th 291, 298.) The terms of the statute can be construed by reference to other legitimate sources such as statutes, legislative history, and judicial decisions. (*People ex rel. Gallo v. Acuna, supra*, 14 Cal.4th at pp. 1116-1117.)
>
> It is settled that a statute should be construed "in the light of the objective sought to be achieved by it as well as of the evil sought to be averted." (*In re Huddleson* (1964) 229 Cal.App.2d 618, 624.) And where the statute encompasses both innocuous and unlawful conduct, it will be given a restrictive interpretation so that it prohibits only the unlawful conduct. (*In re Cregler* (1961) 56 Cal.2d 308, 311-312.)
>
> Section 266h, subdivision (a) prohibits, as relevant here, "[A]ny person who, knowing another person is a prostitute, lives or derives support or maintenance in whole or in part from the earnings or proceeds of the person's prostitution. . . ." Pimping laws are aimed at discouraging prostitution by prohibiting third parties, who criminally exploit such persons, from expanding an existing prostitute's operation or expanding the supply of available prostitutes. (*People v. Maita* (1984) 157 Cal.App.3d 309, 316; *People v. Pangelina* (1981) 117 Cal.App.3d 414, 424.) The purpose of section 266h is, therefore, "to discourage any . . . person from soliciting or receiving material gain from the practice of prostitution." (*People v. Smith, supra*, 44 Cal.2d at p. 80, italics added.)
>
> . . .
>
> Here, the record reveals that Alvarez admitted she was a prostitute, a fact appellant does not contest. There is also evidence that Alvarez's income derived from her prostitution was used to support appellant, who was unemployed. "[O]ffenders cannot complain of the vagueness of a statute if the conduct with which they are charged falls clearly within its bounds. . . ." (*People v. Weaver* (1983) 147 Cal.App.3d Supp. 23, 36; *see People v. Nguyen* (1984) 161 Cal.App.3d 687, 695.)
>
> Whether appellant realized he was violating the law does not affect section 266h,

> subdivision (a)'s constitutionality as applied to him.  "[W]e 'require citizens to apprise themselves ... of statutory language. . . .' [Citations.]" (*People v. Heitzman* (1994) 9 Cal.4th 189, 200.)  They are presumed to know the law (*People ex rel. McKune v. Weller* (1858) 11 Cal. 49, 65), and ignorance of the law is no excuse for a violation thereof (*People v. Mayer* (2003) 108 Cal.App.4th 403, 413).
>
> Moreover, "[n]o person of ordinary intelligence would be left guessing as to the meaning of" the statutory language in question here.  (*People v. Truong* (2001) 90 Cal.App.4th 887, 899.)  Because the statutory language is sufficiently clear, we reject appellant's claim that the statute is vague as applied to him.

See Resp't Lodged Doc. 4 at 7-9.

A criminal statute is unconstitutionally vague in violation of the Fourteenth Amendment's Due Process Clause if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute.  The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." See United States v. Harriss, 347 U.S. 612, 617 (1954); see also Rose v. Locke, 423 U.S. 48, 49  50 (1975) (per curiam) (citing and applying the standard articulated in Harriss to a challenge raised against a state criminal statute on habeas review); Wainwright v. Stone, 414 U.S. 21, 22 (1973) (per curiam) (same).

"'[I]t is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand.'"  See United States v. Powell, 423 U.S. 87, 92 (1975) (quoting United States v. Mazurie, 419 U.S. 544, 550 (1975)); see also United States v. Williams, 553 U.S. 285, 304 (2008).  The Supreme Court has explained that "this prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision." See Rose, 423 U.S. at 49 (citing Robinson v. United States, 324 U.S. 282, 285  86 (1945)).  Moreover, "[t]he judgment of federal courts as to the vagueness or not of a state statute must be made in the light of prior state constructions of the statute. . . .  When a state statute has been construed to forbid identifiable conduct . . ., claims of impermissible vagueness must be judged in that light." See Wainwright, 414 U.S. at 22; see also Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 n. 5; Rose, 423 U.S. at 51; Leavitt v. Arave, 383 F.3d 809, 835 (9th Cir. 2004), cert. denied, 545 U.S. 1105 (2005).

Here, Petitioner does not allege any relation between § 266h, subd. (a) and a First Amendment freedom. Accordingly, under the Supreme Court authorities cited above, any facial challenge to the statute is foreclosed, and the Court's inquiry is limited to whether Petitioner could "reasonably understand that his contemplated conduct was proscribed," rather than whether various hypothetical factual scenarios were proscribed. See Mazurie, 419 U.S. at 553 (resolving an as-applied vagueness challenge to a criminal statute by asking whether the defendants were on notice that their conduct was proscribed).

As discussed above in connection with Petitioner's insufficiency of the evidence claim, § 266h, subd. (a) prohibits a person who "knowing another person is a prostitute," from deriving "support or maintenance in whole or in part from the earnings or proceeds of the person's prostitution." Petitioner claims that § 266h, subd. (a) is unconstitutionally vague as applied to him because the statute does not provide adequate notice that living with a prostitute amounts to criminal conduct. The Court does not agree with Petitioner's contentions.

It was not objectively unreasonable for the Court of Appeal to reject Petitioner's vagueness claim and conclude that Petitioner was on notice that the conduct proscribed by the statute amounted to criminal conduct. To begin with, Petitioner does not deny that he was aware that Alverez was working as a prostitute. As noted above, trial testimony established that Petitioner was unemployed while he and Alvarez were living together and Alverez was working as a prostitute. In light of these facts, the Court agrees with the Court of Appeals that Petitioner's suggested "ignorance of the law" was no excuse for his violation. Similar to state law, a habeas petitioner's lack of knowledge with respect to a particular rule or law rarely, if ever, provides justification for failure to comply with that rule or law. See Pincay v. Andrews, 351 F.3d 947, 951 (9th Cir. 2003) ("No axiom is more familiar than 'Ignorance of the law is no excuse.'"). The Court additionally agrees with the state court's finding that the statute here was sufficiently clear to apprise Petitioner that the "contemplated conduct was proscribed." See Mazurie, 419 U.S. at 553. Accordingly, the Court finds the statute is constitutional as applied and concludes that the state court's rejection of Petitioner's vagueness

challenge to § 266h, subd. (a) was neither contrary to nor involved an unreasonable application of clearly established Supreme Court law.

### C.     Ground Four: Petitioner's claim of instructional error

Petitioner's Ground Four asserts the trial court's instruction on reasonable doubt violated his rights to due process. See Petition at 6; see also Resp't Lodged Doc. 1 at 58-62. More specifically, Petitioner contends that the trial court's use of CALCRIM No. 220 violated his federal right to due process because the instruction precluded the jury's consideration of the lack of evidence in its determination of whether a reasonable doubt existed as to Petitioner's guilt. See Resp't Lodged Doc. 1 at 58-62.

A challenge to a jury instruction as erroneous under state law is not a basis for federal habeas relief. Estelle v. McGuire, 502 U.S. 62, 71 72 (1991). "The only question ... is 'whether [a jury] instruction by itself so infected the entire trial that the resulting conviction violates due process.' " Estelle, 502 U.S. at 72 (citation omitted); see Waddington v. Sarausad, 555 U.S. 179 (2009). In making that determination, "[t]he jury instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." Id. (citation and quotation marks omitted). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional right].'" Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). "[W]e 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'" Estelle, 502 U.S. at 72 73 (quoting from Dowling v. United States, 493 U.S. 342, 352 (1990)). Petitioner's "burden is especially heavy" because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977).

The jury was instructed with CALCRIM No. 220, which defined reasonable doubt as follows:

> Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt. [¶] In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence throughout the entire trial. Unless

the evidence proves [Petitioner] guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty.

See CT at 179.

Petitioner argued in California (and here) that the instruction "improperly requires the defendant to persuade the trier of fact of his innocence by evidence presented at trial and eliminates the doctrine of reasonable doubt due to a lack of evidence." See Resp't Lodged Doc. 1 at 58-62. In particular, Petitioner contends that the failure to include in the instruction that "a lack of evidence could provide reasonable doubt eliminated from the jury's consideration the very defense necessary to preserve due process." See Resp't Lodged Doc. 1 at 65.

Relying on People v. Flores, 153 Cal.App.4th 1088 (2007), ("Flores"), a case on all fours with the instant case, the Court of Appeals rejected Petitioner's contention that the instructions provided were misleading. See Resp't Lodged Doc. 4 at 18-20. Quoting from Flores, the Court of Appeals stated:

> "Here, the plain language of the instruction given tells the jury that '[unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty.' (CALCRIM No. 220.) . . . The only reasonable understanding of this language is that a lack of evidence could lead to reasonable doubt. In addition, the trial court instructed the jury with CALCRIM No. 355, which specifically stated that a defendant 'may rely on [the] state of the evidence and argue that the People have failed to prove the charges beyond a reasonable doubt.'" (*Flores, supra*, 153 Cal.App.4th at pp. 1092-1093.)
>
> In the instant case, as in *Flores*, the trial court instructed the jury with CALCRIM Nos. 220 and 355. Appellant acknowledges our holding in *Flores*, as well our decision in *People v. Hernandez Rhos* (2007) 151 Cal.App.4th 1154, but claims his case is factually distinct because it involves "a case where the 'victim' testifies that the incident did not occur as alleged." For purposes of this issue, we fail to see the distinction, and in view of our holding in Flores, we reject appellant's challenge to CALCRIM No. 220.

See Resp't Lodged Doc. 4 at 18-20.

As Buckler v. McDonald, 2010 WL 2843426 (OUTCALL. 2010) points out, three other California cases found that CALCRIM No. 220 does not violate due process. Id. at *7 (citing People v. Flores, 153 Cal.App.4th 1088, 1092 93 (2007); People v. Rios, 151 Cal.App.4th 1154 (2007); and People v. West brooks, 151 Cal.App.4th 1500 (2007)).

The federal constitution does not require that state courts define reasonable doubt in a particular way. See Victor v. Nebraska, 511 U.S. 1, 6, (1994). Instead the instruction must correctly communicate the concept of reasonable doubt to the jury. See Holland v. United States, 348 U.S. 121, 140 (1954). "The proper inquiry is not whether the instruction could have been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury did so apply it. The constitutional question . . . is whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the Winship standard." Victor, 511 U.S. at 6 (referring to In re Winship, 397 U.S. 358, 362 (1970) which notes "it has long been assumed that proof of a criminal charge beyond a reasonable doubt is constitutionally required").

Here it is clear that the trial court's instructions properly communicated the concept of reasonable doubt. Accordingly, the Court of Appeal's decision was not an unreasonable application of established federal law or an unreasonable determination of the facts. Ground Four does not warrant habeas relief.

**IV.     Certificate of Appealability**

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides that a circuit judge or judge may issue a certificate of appealability where "the applicant has made a substantial showing of the denial of a constitutional right." Where the court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 326; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part."

Miller-El, 537 U.S. at 338. In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable; thus Petitioner's claim is not deserving of encouragement to proceed further. Consequently, the Court hereby denies a certificate of appealability.

**ORDER**

Accordingly, the Court ORDERS that:

1. The petition for writ of habeas corpus is DENIED WITH PREJUDICE;
2. The Clerk of the Court is DIRECTED to enter Judgment for Respondent; and
3. A Certificate of Appealability is DENIED.

IT IS SO ORDERED.

Dated:   August 5, 2011                         /s/ **Dennis L. Beck**
                                                UNITED STATES MAGISTRATE JUDGE